UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JASON ROIG, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs.<br><br>v.<br><br>ALDER HOLDINGS, LLC, a Utah limited liability company,<br><br>Defendant. | Case No.<br><br>COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

**COLLECTIVE ACTION COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff, JASON ROIG ("Plaintiff"), pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), hereby files his Collective Action Complaint for Damages and Demand for Jury Trial, as follows:

**INTRODUCTION**

1. During the past 3 years Defendant has misclassified Plaintiff and other similarly situated Field Service Technicians throughout the United States as independent contractors to avoid federal overtime wage obligations under the Fair Labor Standards Act ("FLSA"). As a result of this intentional and willful misclassification, Defendant deprived Plaintiff and hundreds of other employees of federal overtime wages during the course of the previous three (3) years. This action arises under the FLSA, pursuant to 29 U.S.C. §§ 201–216, to recover all federal overtime wages that Defendant refused to pay Plaintiff and all other similarly situated employees.

## PARTIES

2. During all times material hereto, Plaintiff was a resident of Puerto Rico, over the age of 18 years, and otherwise *sui juris*.

3. During all times material hereto, Defendant was a Utah limited liability company located and transacting business within Orem, Utah, with a principal place of business located at 450 North 1500 West, Orem, Utah 84057, within the jurisdiction of this Honorable Court.

4. Plaintiff worked for Defendant in various locations in the United States.

5. During all times material hereto, Defendant was vested with control and decision-making authority over the scheduling, hiring, firing, day-to-day operations, and pay practices that pertained to Plaintiff.

6. Defendant exercised significant control over the nature and degree of the work performed by Plaintiff, and the economic realities of the relationship between Plaintiff and Defendant was consistent with that of employer-employee.

7. Defendant was Plaintiff's employer, as defined by 29 U.S.C. § 203(d), during all times pertinent to the allegations herein.

## JURISDICTION AND VENUE

8. All acts and/or omissions giving rise to this dispute took place within Orem, Utah, which falls within the jurisdiction of this Honorable Court.

9. Defendant regularly transacts business in Orem, Utah, and jurisdiction is therefore proper within the District of Utah pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

10. Defendant may be served in the State of Utah through its registered agent, M&B Corporate Services, LLC, which is located at Nine Exchange Place Suite 600, Salt Lake City, Utah 84111.

11.     Venue is also proper within the District of Utah pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391(b).

## PLAINTIFF'S WORK FOR DEFENDANT

12.     Defendant is a home security door-to-door sales company that relies on Field Service Technicians to install and otherwise perform maintenance on a number of devices it sells across the country including, but not limited to, touchscreen panels, indoor and outdoor cameras, and door and window sensors.

13.     Defendant operates in several states throughout the country and hires Field Service Technicians to perform work in these locations – all of whom share substantially similar duties and responsibilities related to installation work and customer service.

14.     During the past three (3) years Defendant has regularly advertised jobs for Field Service Technicians in Florida, Arkansas, Oklahoma, Ohio, Alabama, Louisiana, Washington, Idaho, Utah, Texas, Tennessee, Mississippi, South Carolina, North Carolina, and Georgia.

15.     The job postings in all of these states are substantially similar, and in many cases, virtually identical.

16.     When Defendant hires a Field Service Technician it provides them with an offer letter that outlines the terms of their employment.

17.     Defendant requires these Field Service Technicians to travel significant distances to perform work.

18.     Defendant also requires these Field Service Technicians to wear company uniforms while they are performing work in the field which bear the Alder logo.

19. Defendant requires these Field Service Technicians to also wear identification badges while they are performing work in the field which designates them as being associated with Alder. These identification badges are attached to a lanyard bearing the Alder logo.

20. Defendant hired Plaintiff as a Field Service Technician on or about January 16, 2023.

21. Defendant assigned Plaintiff to perform work on projects in Ohio, West Virginia, and Kentucky.

22. Plaintiff was required to travel significant distances from his residence in Puerto Rico to these job locations.

23. Defendant required Plaintiff to work in excess of forty (40) hours in one or more workweeks.

24. Defendant required Plaintiff to work an average of approximately sixty (60) hours per week.

25. During his employment as a Field Service Technician, Plaintiff was required to wear the following Alder uniform:



26. During his employment as a Field Service Technician, Plaintiff was required to wear the following Alder identification badge and lanyard:



27. Defendant required Plaintiff and other Field Service Technicians to wear these uniforms and identification badges so that customers would believe the Field Service Technicians were Alder employees.

28. Defendant compensated Plaintiff and other Field Service Technicians a flat rate based on the number of projects completed.

29. During his employment, Defendant compensated Plaintiff a flat rate of $50.00 per completed project regardless of how long the project would take the complete.

30. Defendant misclassified Plaintiff and other similarly situated Field Service Technicians as "independent contractors" even though the economic realities of the work

5

relationship demonstrated that Plaintiff and the Field Service Technicians were Defendant's employees.

31. Defendant misclassified Plaintiff and other similarly situated Field Service Technicians in an effort to avoid federal overtime wage obligations under the FLSA.

32. In April of 2023, Defendant attempted to change Plaintiff's status from "independent contractor" to a "W-2 Employee."

33. However, Defendant refused to pay Plaintiff federal overtime wages during one or more workweeks when he worked more than forty (40) hours.

34. Defendant failed to comply with the record-keeping requirements under FLSA concerning the number of hours worked by Plaintiff and the compensation paid to Plaintiff.

35. Plaintiff's last day working for Defendant was on or about April 18, 2023.

## **FLSA COVERAGE**

36. Defendant is covered under the FLSA through enterprise coverage, as Defendant was engaged in interstate commerce during all pertinent times in which Plaintiff was employed. More specifically, Defendant engaged in interstate commerce by virtue of the fact that its business activities involved those to which the FLSA applies. Defendant's business and Plaintiff's work for it affected interstate commerce because the goods and materials that Plaintiff used on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.

37. During his employment with Defendant, Plaintiff and various other similarly situated employees handled and worked with goods and/or materials that moved through interstate commerce, including, but not limited to the following: cell phones, telephones, extension cords, pencils, pens, paper, tape, keyboards, computers, cables, stamps, markers, staplers, staples,

invoices, head sets, extension cords, masks, boxes, envelopes, hand sanitizer, rebuild kids, cylinder heads, injectors, bearings, gaskets, crankshafts, diesel engines, screw drivers, hammers, nails, screws, washers, wd40, etc.

38. Defendant also regularly employed two (2) or more employees for the relevant time period, who handled the same or similar goods and materials handled by Plaintiff, thus making Defendant's business an enterprise covered by the FLSA.

39. Defendant had gross annual revenues in excess of $500,000.00 in the years 2020, 2021 and 2022 and is expected to gross in excess of $500,000.00 in the year 2023.

40. During his employment with Defendants, Plaintiff was regularly and recurrently engaged in an instrumentality of interstate commerce and subject to individual coverage, as that term is defined by the FLSA. More specifically, Plaintiff used the interstate telephone system to regularly and recurrently speak with Defendant's customers who resided outside of the state of Utah over the phone. Plaintiff also regularly and recurrently sent and received correspondences to and from Defendant's customers and potential customers outside of Utah during his employment period.

41. During his employment with Defendant, Plaintiff (i) performed non-exempt work; (ii) did not have supervisory authority over any individuals; (iii) did not make any decisions of importance on behalf of Defendant, and (iv) was not required to possess any advanced training, skill, or prolonged education in order to perform any of his primary duties and responsibilities.

42. During all material times hereto, Plaintiff was a non-exempt, hourly employee of Defendant, within the meaning of the FLSA.

**DEFENDANT MISCLASSIFIES FIELD SERVICE TECHNICIANS NATIONWIDE**

43.     During his employment period, Plaintiff was specifically aware of at least thirty-five (35) other Field Service Technicians who were similarly misclassified as independent contractors.

44.     Defendant made the decision to misclassify Plaintiff and the other Field Service Technicians across the country from its headquarters in Orem, Utah.

45.     Defendant controls the work performed by Field Service Technicians and assigns Field Service Technicians to work on certain projects.

46.     Defendant's job postings for the Field Service Technician positions acknowledge that "overtime" will be required to assist on priority service tickets.

47.     Defendant treats the Field Service Technicians the same regardless of their geographic location in the United States.

**COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS – 29 U.S.C. § 207**
**(Nationwide Collective)**

48.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 47 as though set forth fully herein.

49.     Plaintiff alleges this Action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

50.     Defendant refused to pay Plaintiff and similarly situated Field Service Technicians one-and-a-half times their regular hourly rate for hours worked over forty (40) in one or more weeks of their employment.

51.     Plaintiff seeks certification under 29 U.S.C. § 216(b) of the following similarly situated Nationwide Collective:

>**Any and all Field Service Technicians who worked for Defendant who were classified as independent contractors and worked more than 40 hours in a workweek but were not paid overtime wages at any time during the previous three (3) years**.

52. Plaintiff claims the applicable federal overtime wage rate for all hours over forty (40) that he worked during his employment.

53. Defendant willfully and intentionally refused to pay Plaintiff and similarly situated individuals federal overtime wages as required by the FLSA, as Defendant knew or should have known of the FLSA's overtime wage requirements.

54. Defendant's willful and/or intentional violations of federal wage law entitle Plaintiff to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, JASON ROIG, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, ALDER HOLDINGS, LLC, and award Plaintiff: (a) unliquidated damages; (b) liquidated damages; (c) reasonable attorney's fees and costs; and any such further relief as may be deemed just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, JASON ROIG, on behalf of himself and the Nationwide Collective, demands a trial by jury on all appropriate claims.

Dated: October 11th, 2023.

| | |
|---|---|
| MORGAN & MORGAN, P.A.<br>222 S. Main Street, Suite 537<br>Salt Lake City, UT 84101<br>Ph: (689) 216-7762<br>Fax: (689) 216-7812<br>*Counsel for Plaintiffs*<br><br>By: */s/ Justin Galvez*<br>JUSTIN GALVEZ, ESQUIRE<br>Utah Bar No.<br>jgalvez@forthepeople.com | **MORGAN & MORGAN, P.A.**<br>8151 Peters Road<br>4th Floor<br>Plantation, Florida 33324<br>Ph: (954) 327-5355<br>*Counsel for Plaintiffs*<br><br>By: */s/ Andrew R. Frisch*<br>ANDREW R. FRISCH, ESQUIRE<br>Florida Bar No. 27777<br>afrisch@forthepeople.com |