# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| JASON ROIG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALDER HOLDINGS, LLC, a Utah limited liability company,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:23-cv-00721-TC-JCB<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Jared C. Bennett |

This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiff Jason Roig's ("Mr. Roig") Expedited Motion for Protective Order.[2] Therein, Mr. Roig requests a court order restricting communications between Defendant Alder Holdings, LLC ("Alder") and Plaintiff, opt-in Plaintiffs, or members of the putative collective in this case. On March 13, 2024, the court held an evidentiary hearing to make specific factual findings to guide the court in deciding this motion.[3] After evaluating the evidence adduced at the hearing, the court concludes that the communication made by Alder's managing member, Adam Schanz ("Mr. Schanz") to opt-in Plaintiff Raydell Mason ("Mr.

---

[1] ECF No. 18.

[2] ECF No. 27.

[3] ECF No. 38.

Mason")[4] was improper because it was intended to unduly pressure Mr. Mason to drop out of this lawsuit. However, in balancing the facts against Alder's rights under the First Amendment of the United States Constitution, the court fashions a protective order that is far more modest than the one Mr. Roig proposes.[5] Consequently, Mr. Roig's motion is granted in part and denied in part.

### FINDINGS OF FACT

1. Alder is a home security door-to-door sales company.[6]
2. Mr. Schanz is Alder's managing member.[7]
3. Mr. Roig's complaint in this action alleges that Alder hires Field Service Technicians ("FSTs") as independent contractors, thereby denying these employees overtime wages.[8]
4. Mr. Roig asserts one cause of action against Alder for violations of the Fair Labor Standards Act ("FLSA"),[9] 29 U.S.C. § 207, and seeks certification of a "Nationwide Collective" under 29 U.S.C. § 216(b).[10]
5. Alder formerly employed Mr. Mason.[11]

---

[4] Mr. Roig's filings spell Mr. Mason's first name as "Raydel." However, the court notes that the exhibits presented at the hearing indicate that Mr. Mason spells his name "Raydell." ECF No. 38, ECF No. 38-1. The court will use the spelling that Mr. Mason has specified.

[5] ECF No. 27 at 4.

[6] ECF No. 1 at ¶ 12.

[7] ECF No. 32 at 9.

[8] ECF No. 1 at ¶ 1.

[9] *Id.*

[10] *Id.* at ¶¶ 48–54.

[11] March 13, 2024 Evidentiary Hearing Transcript, ("Tr.") 24:21–25:6.

6. Mr. Mason's employment with Alder was terminated because Mr. Mason allegedly used the Alder company gas card for personal use.[12]

7. Mr. Mason filed a Declaration in Support of Conditional Certification of FLSA Collective Action and a Consent to Sue Under the FLSA on February 9, 2024.[13]

8. On February 12, 2024, Mr. Schanz called Mr. Mason twice.[14]

9. During their telephone conversation, Mr. Schanz sought to settle Mr. Mason's FLSA claims, among other things.[15]

10. After the call, Mr. Schanz sent Mr. Mason a settlement agreement.[16]

11. Although the settlement agreement itself was never received into evidence at the hearing,[17] the parties agreed that the agreement sought to settle all pending claims that Mr. Mason and Alder may have had against each other, including any FLSA claims.[18]

12. In exchange for forfeiting his FLSA claims, Mr. Schanz offered to reinstate Mr. Mason's employment with Alder as part of the proposed settlement.[19]

13. Specifically, Mr. Schanz offered to rehire Mr. Mason if Mr. Mason signed the settlement agreement and convinced Christen Keller ("Ms. Keller")—another opt-in Plaintiff and

---

[12] ECF No. 32 at 9–10.

[13] ECF No. 24.

[14] ECF No. 28 at 1. *See also* Tr. 8:2–9:7.

[15] Tr. 9:8–13.

[16] Tr 10:1–7.

[17] Tr. 125:25–131:8.

[18] Tr 10:1–7; 104:4–10.

[19] Tr. 10:8–16.

   Mr. Mason's fiancé—to sign a settlement agreement similar to the one that Mr. Mason had received.[20]

14. Mr. Mason sent a text message to Mr. Schanz four days after the phone call.[21]

15. In the message, Mr. Mason asked Mr. Schanz to call him "if [Mr. Schanz] [felt] comfortable" and indicated that "[Ms. Keller] is down to let [the lawsuit] go as well."[22]

16. No one at Alder has directly contacted Ms. Keller about this lawsuit.[23]

17. Mr. Mason desires to pursue wage claims against Alder, but, after his conversation with Mr. Schanz, Mr. Mason feels pressure to drop out of this lawsuit so that he can again work at Alder in order to pay his rent.[24]

18. Mr. Schanz has not contacted any other former or current Alder FSTs about this action.[25]

### CONCLUSIONS OF LAW

The context and effect of Mr. Schanz's communication with Mr. Mason exhibited undue pressure and, therefore, the court restricts Mr. Schanz's future communications with Plaintiff, opt-in Plaintiffs, and members of the putative collective in this case during the opt-in period regarding the FLSA claims in this action. However, as shown below, this restriction is far narrower than what Mr. Roig requested.

---

[20] Tr. 25:24–26:10.

[21] ECF No. 38-1.

[22] *Id.*

[23] Tr. 53:16–19.

[24] Tr. 26:11–27:4.

[25] Tr. 108:18–21.

1. Section 216(b) of the FLSA provides that an employee may bring an action for himself and other employees "similarly situated."[26]
2. Unlike Fed. R. Civ. P. 23 class actions in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to opt into the action in writing to become members of the class.[27]
3. As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions.[28]
4. A court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."[29]
5. In *Gulf Oil*, a case dealing with a Rule 23 class action, the Supreme Court acknowledged that although "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse"[30] including "[u]napproved communications to class members that mispresent the status or effect of the pending action."[31]

---

[26] 29 U.S.C. § 216(b).

[27] *Id.*

[28] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

[29] *Id.* at 170.

[30] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100; *see also Hoffmann-La Roche Inc.*, 493 U.S. at 170-72 (applying *Gulf Oil* to collective actions under section 216 of the FLSA).

[31] *Gulf Oil,* 452 U.S. at 100 n.12.

6. Thus, the court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."[32]

7. Although the court has broad authority to manage the collective action, the First Amendment of the United States Constitution requires the court to narrowly tailor any restrictions on a party's ability to speak with potential class members.[33]

8. Limiting communications between parties and both actual and potential class members must be based on a clear record and specific findings that weigh both the need for imposing limitations and the potential interference with the rights of parties.[34]

9. To determine when to restrict communication with putative class members, the court evaluates the evidence of actual or threatened abuse.[35]

10. Restrictive orders are appropriate where *ex parte* communications mislead, coerce, or improperly seek to dissuade prospective class members from joining the suit.[36]

11. "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy [F]irst [A]mendment concerns if it is grounded in good cause and issued with a heightened sensitivity for [F]irst [A]mendment concerns."[37]

---

[32] *Id.* at 100.

[33] *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1105 (D. Colo. 2013) (citing *Gulf Oil*, 452 U.S. at 102).

[34] *Gulf Oil*, 452 U.S. at 101.

[35] *See, e.g.*, *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985).

[36] *See, e.g.*, *Bass v. Pjcomn Acquisition Corp.*, 2011 WL 902022, at *4 (D. Colo. Mar. 14, 2011) (quotations and citations omitted).

[37] *Kleiner*, 751 F.2d at 1205.

12. To strike this balance, courts examine four criteria to determine good cause: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; [4] and the duration of the order."[38]

13. The court will not address the issue of whether the employment agreements that Mr. Roig, Mr. Mason, and Ms. Keller previously entered into waived any right to participate in a collective action against Alder because this is a dispositive issue reserved for Judge Campbell following limited discovery.[39] The court does not need to decide the ultimate issue in order to establish the communication boundaries between the parties and potential parties in the meantime.

14. Contrary to Alder's assertion, Mr. Roig has standing to request a protective order on behalf of Mr. Mason, Ms. Keller, and putative opt-in Plaintiffs because plaintiffs who opt into a collective action have party status.[40]

15. Mr. Schanz's call to Mr. Mason[41] sought to unduly pressure Mr. Mason and Ms. Keller into forfeiting their claims in this action.[42] By telling Mr. Mason of the potential criminal claims that Alder could report against Mr. Mason but then offering to re-employ him if he

---

[38] *Id.* at 1206.

[39] ECF No. 31 at 7.

[40] *See, e.g.*, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018); *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016); *see also* 7B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1807 (3d ed. 2016).

[41] Tr. 95:16–96:5.

[42] Tr. 9:8–10:15.

and his fiancé would forfeit their claims in this action, Mr. Schanz clearly applied undue pressure. Indeed, even if Mr. Schanz *intended* this conversation to offer a "second chance" to Mr. Mason,[43] it would foreseeably and clearly did pressure Mr. Mason to give up his claims in this suit.

16. To be clear, that court does not find that Mr. Schanz threatened Mr. Mason with criminal prosecution unless he forfeited his claims in this action because: (1) Mr. Mason was equivocal in his testimony on that point,[44] and (2) in any event, Mr. Mason's text to Mr. Schanz four days after the phone call raises a reasonable inference based on its timing and wording—especially when placed in context with Mr. Schanz's unrefuted testimony about his relationship with Mr. Mason[45]—that Mr. Schanz did not make such a threat.

17. Nevertheless, the undisputed evidence also shows that Mr. Schanz *mentioned* the criminal claims in the conversation and sought to discourage Mr. Mason from joining this suit by offering to reinstate his employment by requiring Mr. Mason and Ms. Keller to sign a settlement agreement that included waiving the FLSA claims in this action in exchange for re-employment at Alder.[46] Under the circumstances, that is undue pressure.

---

[43] Tr. 77:8–12.

[44] Tr. 27:20–28:12.

[45] Tr. 63:18–23.

[46] The court concludes that Mr. Schanz's communication with Mr. Mason did not threaten Mr. Mason with criminal prosecution unless he agreed to sign the settlement agreement. However, Alder's argument that there is "nothing improper" about doing just that is legally incorrect. ECF No. 32 at 7. In fact, threatening to accuse another person of a crime in exchange for settling a lawsuit could amount to the crime of extortion. Under 18 U.S.C. § 875(d):

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce

## ORDER

Based on the foregoing, the court narrowly tailors a protective order restricting communications between Mr. Schanz and Mr. Mason, Mr. Roig, and Ms. Keller to limit speech as little as possible while still addressing the improper nature of Mr. Schanz's communication with Mr. Mason. Therefore, the court HEREBY ORDERS the following:

1. Mr. Schanz, Alder employees, or their authorized representatives may communicate with Mr. Roig, Mr. Mason, Ms. Keller, and all other putative opt-in Plaintiffs about the FLSA claims in this action. However, *before* making any such communications, Alder, Mr. Schanz, and anyone authorized to represent them must submit the communications in writing to the court for prior approval.

2. To receive court approval of such written communication, Alder's counsel must email the proposed communication to utdecf_bennett@utd.uscourts.gov.

3. Alder, Mr. Schanz, and their authorized representatives may communicate with Alder employees regarding matters outside the FLSA claims in this action, regardless of whether those employees are putative opt-in Plaintiffs.

4. This order is effective until after the opt-in period has closed.

---

any communication containing any threat . . . to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

Obtaining a signed settlement agreement that forfeits a person's claims in a civil lawsuit is a "thing of value." And if that settlement were obtained by a "threat to accuse [another] person of a crime," 18 U.S.C. § 875(d), and was made using interstate communications, it may be a Class E felony under federal law. 18 U.S.C. § 3581(b)(5). Therefore, contrary to Alder's arguments, using threats of criminal prosecution to coerce another person to drop their claims in lawsuit would clearly be improper.

This order adequately balances maintaining fair proceedings in this action with First Amendment concerns. On the one hand, Mr. Roig has demonstrated that Mr. Schanz's communications with opt-in Plaintiffs may unduly pressure them to drop out of the collective action. But on the other hand, Alder, Mr. Schanz, and their authorized agents may still communicate about this action and other matters outside of this action with the opt-in and putative opt-in Plaintiffs under the conditions set forth above. A less restrictive order would not adequately protect the collective action's purposes. And, in any event, this order's duration is limited. Therefore, the court GRANTS IN PART AND DENIES IN PART Mr. Roig's Expedited Motion for Protective Order.[47]

IT IS SO ORDERED.

DATED this 5th day of April 2024.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[47] ECF No. 27.