Victor A. Sipos, Utah Bar No. 9211
Sipos Law, PLLC
10421 South Jordan Gateway, Suite 600
South Jordan, UT 84095
Tel: 801-860-3444
Fax: 801-665-1266
Email: victor@siposlaw.com

Attorney for Alder Holdings, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JASON ROIG, individually and on behalf of all other similarly situated,<br><br>     Plaintiffs,<br>vs.<br><br>ALDER HOLDERINGS, LLC, a Utah limited liability company,<br><br>     Defendant. | Case No. 2:23-cv-00721-TC-JCB<br>Hon. Tena Campbell<br><br>**REPLY BRIEF IN SUPPORT OF ALDER HOLDINGS, LLC'S MOTION TO DISMISS OR STRIKE, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT** |

   In his opposition brief ("Opp."), *ECF Doc. 54*, plaintiff Jason Roig ("Plaintiff" or "Roig") fails to give any credible reason to deny Alder Holdings, LLC ("Defendant" or "Alder") motion to dismiss or to strike, *ECF Doc. 50*. Plaintiff's opposition is based on four faulty arguments: (1) an irrelevant and misleading criticism of the authority cited by Alder, (2) an irrelevant statement that Alder's signature does not appear on the SFR Agreement and the demonstrably false claim that Alder did not otherwise assent, (3) an unsupported and false claim that Roig did not work as an Sales Finishing Representative ("SFR"), and (4) a far-fetched effort to mischaracterize an offer letter into an "integrated contract" when it clearly is not. In short, there is no basis to deny Alder's motion.

## I. REPLY TO STATEMENT OF UNDISPUTED MATERIAL FACTS

The following are Alder's statements of undisputed material facts, as well as the response and replies thereto:

1. Defendant hired Plaintiff to work as a Field Service Technician on January 16, 2023. *ECF Doc. 13 at 7, Decl. of Kace Sherwood* ("Sherwood Decl.") at ¶ 2.

   **Plaintiff's Response:** Admitted that Defendant hired Plaintiff to work as a Field Service Technician.

2. As part of the hiring process, on January 16, 2023, Defendant signed the Sales Finishing Representative Agreement ("SFR Agreement"), a copy of which is at ECF 13 at 9-30. *Ex. A [ECF Doc. 50 at 15], Plf's Resps. to Reqs. for Admis.* at resp. to RFA nos. 1-2 (Plaintiff admitting he signed the SFR Agreement as a requirement to receive work from Defendant).

   **Plaintiff's Response:** Denied. There is no evidence that Defendant signed the SFR Agreement, and no evidence that Defendant otherwise assented to its terms. See ECF 13 at 25 of 30 (SFR Agreement unsigned by Alder Holdings, LLC).

   **Defendant's Reply:** Plaintiff does not dispute he signed the SFR Agreement as a condition precedent to receiving work from Defendant. Assent by Alder is shown by the fact that Alder: (1) drafted the agreement, (2) placed it on its letterhead, (3) sent it to Roig; (4) informed him he could only get work if he signed it, (5) kept a copy of it as a business record, (6) provided work to Roig, and (7) repeatedly took steps to enforce the agreement. *Ex. B, Second Decl. of Kace Sherwood* ("2d Sherwood Decl.") at ¶¶ 2-7; *ECF Docs. nos. 13, 20, 32, 50* (efforts by Alder to enforce SFR Agreement).

3. Section 27(g) of the Agreement states (emphasis in original):

   > (g) REPRESENTATIVE EXPRESSLY WAIVES, TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO PARTICIPATE IN, OR TO BE A MEMBER OF, ANY CLASS ACTION OR COLLECTIVE ACTIONS AGAINST ALDER OR ANY OF ITS AFFILIATES. REPRESENTATIVE

> AGREES THAT ANY CLAIM BY REPRESENTATIVE AGAINST ALDER OR ANY OF ITS AFFILIATES WILL BE BROUGHT IN REPRESENTATIVE'S INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

*ECF Doc. 13 at 23, SFR Agreement* at § 27(g) (emphasis in original).

**Plaintiff's Response:** Admitted.

4.  As used by Defendant, the terms "Sales Finishing Representative" and "Field Service Technician" are different ways to describe the same job, the first being more general and the second more specific, similar to the terms "football player" and "running back" in sports, or "lawyer" and "prosecutor" to describe a job. As explained in Defendant's discovery responses:

> "Plaintiff further objects that Plaintiff's discovery requests are premised on the false belief that the terms Field Service Technician ("FST") and Sales Finishing Representative ("SFR") are distinct from one another. Subject to these objections, Alder responds with an analogy: think of an SFR as a "football player" and an FST as a "running back." Football players can be asked to perform many tasks, including running the ball, running routes, catching passes, throwing passes, blocking, tackling, etc. Running backs can be asked to do any of those tasks, but their general focus is to run the ball or block. All FSTs are SFRs. All SFRs can be asked to perform a broad range of activities in the homes of Alder customers, including the initial installation of equipment, ensuring that equipment works correctly, replacing old or defective equipment with upgrades, making service calls to customers who request it, selling customers on the benefits of upgrades and other products and services provided by Alder, performing warranty work, repairing defective equipment, and otherwise being the in-person contact who visits customers. The FST label is for convenience to identify SFRs that have a primary focus on making service calls, but any SFR can make service calls. Likewise, Alder can assign any SFR (including any FST) to perform any task that falls under the SFR umbrella. Some might consider the terms SFR and FST synonymous and the terms might be used interchangeably. When FSTs are hired they are provided the agreement titled Sales Finishing Representative Agreement. Subject to this explanation, Alder admits that Roig worked as a Field Service Technician, which is also to say that he worked as a Sales Finishing Representative."

*Defendant's Discovery Resps, ECF Doc. 49-3* at 4, response to RFA no. 1*; see also, id.* at 16-17, response to interrog. no. 7 ("Sales finishing representative is a broad term for work done at customer's homes after they become Alder customers. …Any SFR might be called to work on any task handled by any other SFR. As such, there is no hard distinction between the terms sales finishing representative, field service technician, install technician, etc. They are all in the category of workers who install, repair, and replace equipment in existing customers' homes."), *id.* at 17, response to interrog. no. 10 ("the Sales Finishing Agreement is the agreement that applies to the job performed by sales finishing representative, which term includes field service technicians.").

      **Plaintiff's Response:** Denied. A party cannot rely upon conclusory allegations or contentions of counsel to meet its burden at summary judgment. *See Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); see also *Decl. of Jason Roig* (denying that he ever worked as a SFR or performed duties of the SFR position); see also *Alder Review Events Summary*, attached as EXHIBIT 3 (Identifying Plaintiff as a Field Service Technician in the Service Tech Department).

      **Defendant's Reply:** Alder objects that the parenthetical statement where Roig denies ever working as an SFR is not supported by the his declaration and is only a false argument of counsel. Roig provides no evidence to dispute the fact. The idea of any relevant distinction between the terms SFR and FST is a fabricated argument conjured up by Roig's counsel with no support other than the terms using different words. Alder's definition of those terms is not a "conclusory allegation," it is the definition of terms that Roig pretends is meaningful. But Roig offers no alternative definition for what those terms mean. Roig's suggestion that he performed duties of an FST but not an SFR is nonsensical because – by definition – an FST is an SFR. *Ex. B, 2d Sherwood Decl.* at ¶8.

Words that did or did not appear on Roig's badge and lanyard are irrelevant to establishing any legally-significant distinction between an FST and SFR.

5. Each FST is an SFR, and therefore it is accurate to say that all work performed by Plaintiff was done by him as both an FST and an SFR. *All evidence cited in response to statement of fact no. 4.*

**Plaintiff's Response:** Denied. A party cannot rely upon conclusory allegations or contentions of counsel to meet its burden at summary judgment. *See Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); see also *Decl. of Jason Roig* (denying that he ever worked as a SFR or performed duties of the SFR position).

**Defendant's Reply:** Roig does not deny this fact. See objection and reply to statement no. 4, above, incorporated here by reference.

## II. RESPONSE TO PLAINTIFF'S ADDITIONAL ALLEGATIONS

6. The Offer Letter transmitted by Alder to Plaintiff contains all material terms regarding his work as an FST, and makes no reference to the duties or pay of an SFT. See EXHIBIT 1.

**Defendant's Response:** There is no such thing as "SFT," although Defendant understands it to mean SFR. The statement is demonstrably false. The offer letter at ECF Doc. 54-1 references a separate employee handbook, rules, policies, and "additional information to complete before your first day." Plaintiff admits he signed the SFR Agreement and that doing so was a condition of getting work from Alder. *ECF Doc. 50* at 15, *Plaintiff's Resps. to Requests for Admissions* at resp. to RFA nos. 1-2.

7. The Offer Letter identifies 3 contingencies for the offer contained therein: (i) successful completion of the background screening; (ii) successful completion of all licensing

requirements; and (iii) Plaintiff's agreement to thoroughly review and understand the Employee Handbook and abide by and follow its policies and procedures. Id.

> **Defendant's Response:** The statement is not a material fact because it omits other relevant statements. For example, the letter also mentions "additional information to complete before your first day." *ECF Doc. 54*-1 at 3. Plaintiff effectively admits that this "additional information" is a reference to the SFR Agreement when he admits that he signed the separate SFR Agreement and that doing so was a condition of getting work from Alder. *ECF Doc. 50* at 15, *Plaintiff's Resps. to Requests for Admissions* at resp. to RFA nos. 1-2.

8. The Offer Letter does not incorporate the SFR Agreement and makes no reference whatsoever to the SFR Agreement. *Id.*

> **Defendant's Response:** The statement is not a material fact, but it is denied. The SFR Agreement can be a binding contract regardless of whether an offer letter "incorporates" it by name or not at all. The offer letter mentions "additional information to complete before your first day" (*ECF Doc. 54*-1 at 3) and Plaintiff admits that Alder required him to sign the SFR Agreement as a condition to getting work. *ECF Doc. 50* at 15, *Plaintiff's Resps. to Requests for Admissions* at resp. to RFA nos. 1-2

9. Plaintiff accepted the terms of the job offer contained in the Offer Letter by (electronically) signing same on February 9, 2023 at 5:10:20 PM (UTC). *Id.* at 2.

> **Defendant's Response:** Admitted, but this is not a material fact. Nothing about the offer letter invalidates the fact that Plaintiff also signed the separate SFR Agreement and that he knew it was a condition of getting work from Alder. *ECF Doc. 50* at 15, *Plaintiff's Resps. to Requests for Admissions* at resp. to RFA nos. 1-2. Nothing in the offer letter purports to change or invalidate the SFR Agreement.

### III. ARGUMENT

#### A. Authority cited by Defendant is persuasive and provides clear indication of how the Tenth Circuit would rule on the relevant issues.

Alder's motion cited extensive authority for three straightforward legal issues: **(Issue 1)** the right to proceed in a collective action is procedural and not substantive, *six cases cited;* **(Issue 2)** those procedural rights can be waived by contract, *nine cases cited;* and **(Issue 3)** such waivers are enforceable even if they appear in contracts that do not include an arbitration provision, *fifteen cases cited*.

In its opposition, Plaintiff makes the strange and irrelevant argument that some of the cases Alder cited for Issue 2 are silent about Issue 3. But it should be self-evidence that Alder cited cases in support of Issue 2 only to support Issue 2. Alder then cited fifteen cases to support Issue 3. Plaintiff fails to explain why this Court should not follow the reasoning of those fifteen cases cited to support Issue 3. Nothing is inconsistent with both Issue 2 and Issue 3 being correct.

While it may be true that the Tenth Circuit has not directly ruled on either Issue 2 or Issue 3, it is relatively easy to predict how it would rule. At least two district courts have openly predicted the Tenth Circuit would follow other courts on these issues. *Rahim v. CSAA Ins. Servs., Inc.*, , 2017 WL 11727746, at *9 (W.D. Okla. Sept. 29, 2017) ("While the Tenth Circuit itself has not addressed whether section 216(b)'s collective action procedure is nonwaivable, courts in this circuit as well as in other circuits have enforced collective and class action waivers"); *Bell v. Ryan Transportation Serv., Inc.*, 176 F. Supp. 3d 1251, 1262 (D. Kan. 2016) ("The court firmly believes that the Tenth Circuit, if faced with this issue, would similarly reject" argument that right to class action is nonwaivable). Roig offers no credible argument for why the Tenth Circuit would deviate from the overwhelming weight of authority on these issues.

#### B. The SFR Agreement is enforceable against Plaintiff.

Plaintiff argues the SFR Agreement is unenforceable because Alder's signature does not appear on the agreement and that Alder did not otherwise asset to the agreement. This argument

has been widely rejected by courts addressing similar circumstances. The SFR Agreement states it is to be "governed by and construed in accordance with" Utah law. *ECF Doc. 13 at 23, SFR Agreement* at § 27(d). Under Utah law, a signature is not required to form a binding agreement. All that is needed is an indication of assent, which can take the form of a signature, or it can be shown by many other manifestations of assent. As the Utah Court of Appeals recently explained,

> "Under standard contract principles, it is established that "the purpose of a signature is to demonstrate mutuality of assent." *Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 34 (Utah Ct. App. 1993) (cleaned up). But it is equally established "that a signature is not always necessary to create a binding agreement." *Id.* (cleaned up). As our supreme court has stated, "it is fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, where they have otherwise indicated their acceptance of the contract, or led the other party to so believe that they have accepted the contract. *Ercanbrack v. Crandall-Walker Motor Co.*, 550 P.2d 723, 725 (Utah 1976)"

*Livingston v. Finco Holdings Corp.*, 2022 UT App 71, ¶ 16 (rejecting argument that lack of signature on agreement made it unenforceable); *see also, Trujillo v. Volt Mgmt. Co.*, 846 F. App'x 233, 236 (5th Cir. 2021)(holding that absence of signature does not invalidate agreement unless there is explicit language that requires signature); *Hickerson v. Pool Corp.,* 2020 WL 5016938, at *4 (D. Colo. Aug. 25, 2020) (holding that a contract reference to signatures suggested that assent could be manifested by signature, but that did not require a signature for the agreement to take effect). The SFR Agreement contains no express requirement that it must be signed for it to be effective.

Alder manifested its assent to the SFR Agreement in multiple ways that courts have recognized as assent. **First**, Plaintiff was "informed that signing the SFR AGREEMENT was a requirement for [him] to receive work from ALDER" and Plaintiff signed it. *ECF Doc. 50 at 15, Plf's Discovery Resps. at resp. to RFA nos. 1-2*. **Second**, Alder drafted the SFR Agreement and attached it to its letterhead. *Ex. B, 2d Sherwood Decl.* at ¶ 3. **Third**, Alder sent the agreement to

Plaintiff for his signature. *Id.* at ¶ 4. **Fourth**, Alder told Roig he could only get work if he signed the SFR Agreement. *Id.* **Fifth**, Alder kept a copy of the agreement as a business record in its file for Roig. *Id.* at ¶ 6. **Sixth**, Alder gave work to Roig, which he knew would only happen if he entered the SFR Agreement. *Id.* at ¶ 7; *ECF Doc. 50* at 15, *Plaintiff's Discovery Resps. at resp. to RFA nos. 1-2*. **Seventh**, Alder sought to enforce the terms of the SFR Agreement. *See, e.g.,* ECF Docs 13, 20, 32 and 50. These actions constitute assent by Alder. As stated in *Livingston*,

> "¶21 … Lender manifested its assent in multiple ways. As the district court found, Lender presented the [agreement] to the Livingstons and required its execution by the Livingstons …. Lender funded the loan that was conditioned on the Livingstons agreeing to arbitration, it maintained the [agreement] in its files, and it sought to enforce the [agreement].
>
> ¶22 Together, these actions manifest Lender's assent to the [agreement], and the Livingstons presented no evidence beyond the absence of a signature to suggest a contrary intent. *See Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) ("We have no doubt that GFA assented to the agreements at issue and intended them to be enforceable: GFA drafted the agreements and affixed its letterhead to them; it maintained the agreements; and it seeks to enforce them."); *Hickerson*, 2020 WL 5016938, at *6 ("Pool also manifested its assent in numerous ways; it drafted the Agreements, presented them to Plaintiffs for signature ..., included reference to the Agreements in the Employee Handbook, had Plaintiffs sign an acknowledgement that they received and read the Employee Handbook, and continued to employ Plaintiffs after they signed the Agreements."); *Wright v. Hernandez*, 469 S.W.3d 744, 761 (Tex. App. 2015) (concluding that the employer manifested its assent to an unsigned arbitration agreement by reparing the agreement, presenting the agreement to the employee for signature, maintaining the agreement as a business record, and seeking to enforce the agreement). Thus, we have no trouble concluding, as did the district court, that Lender manifested to the Livingstons that it agreed to the [agreement] and was therefore bound."

*Livingston,* 2022 UT App 71, ¶ 21-22.

This lack-of-signature argument by Roig displays a striking level of hypocrisy considering his repeated argument that "Plaintiff's employment … was governed by an integrated 2-page employment agreement" it attached at ECF Doc. 54-1. *Opp.* at 1. Plaintiff

doubles and triples down on this point, claiming the offer letter was an "unambiguous integrated contract" and a "fully integrated agreement." *Opp.* at 2, 9, 10. But that Offer Letter also does not include Alder's signature. *ECF Doc. 54-1*. Plaintiff cannot have it both ways, claiming that the unsigned Offer Letter is a fully integrated and unambiguous contract, but then arguing the SFR Agreement cannot be an enforceable agreement simply because it lacks Alder's signature.

But the most important point on the topic remains the undisputed fact that Plaintiff signed the SFR Agreement because he knew it was a condition precedent getting work from Alder. By signing, Roig agreed to the terms therein, including the waiver this motion seeks to enforce.

**C. Plaintiff's argument about not working as an SFR are false and irrelevant.**

In his opposition (at 8), Roig cites highly-generic language about contract interpretation and then makes the non-sequitur accusation that "Alder's position is contrary to this well-settled body of law." *Opp.* at 8. Roig fails to explain how Alder's position fails to follow any law. Roig then makes an argument, without evidence, that an FST is not an SFR.

On its face, there is little reason to believe that Roig – who only worked with Alder for a few weeks, and even then almost always alone – has any basis to define how Alder used terms like FST and SFR. But in reality, Roig does not even try. His declaration mentions irrelevant facts like saying his "badge" had the words "service technician," but his "lanyard" did not say SFR, or that he made no sales for Alder. *ECF 54-2, Roig Decl.* at ¶¶ 4, 6. His declaration (at ¶¶ 5, 8) claims he performed the duties of an FST and not an SFR, but that is a nonsensical statement because an FST is an SFR, and thus there cannot be any duty of an FST that is not also a duty of an SFR; it is purely definitional. Roig does not even attempt to challenge Alder's definition or to proffer some alternative definition or explain for how the two terms are different. In short, nothing in Roig's declaration refute the evidence of how terms are used by Alder.

Ultimately, Roig's hyper-focus on drawing a distinction between the FST and SFR is nothing but a fabricated argument that his counsel concocted in an effort to avoid the waiver in the SFR Agreement. Within Alder, there is no material difference between the terms.

### D. The "Offer Letter" did not supersede and replace the SFR Agreement.

Roig closes with a bizarre and absurd argument that "the Offer Letter establishes an unambiguous integrated contract" that requires "any reference to the SFR Agreement, or other external information" to be "precluded by the parol evidence rule." *Opp.* at 9. Roig's only "support" for this argument are statements in *Far W. Bank v. Robertson*, 2017 UT App 213, and *Montes v. Nat'l Buick GMC Inc.*, 2023 UT App 47, that when the four corners of a contract include an explicit integration clause, then parol evidence cannot be used to suggest it does not.

But in this case, **nothing** about Offer Letter suggests it is an agreement, let alone an integrated agreement that replaces the SFR Agreement or anything else. The Offer Letter is just a letter that extended an offer to Roig and described some information he might have found helpful. **Nothing** in the Offer Letter suggests it was an exclusive agreement between the parties or that it was somehow "integrated." In fact, the letter explicitly states the offer is "contingent upon you agreeing to thoroughly reviewing and understanding the Employee Handbook and to abide by and following the policies, rules, regulations and procedures outlined therein." *ECF Doc. 54-1* at 2. The letter also asks Roig to sign the document if he accepts the offer, and states that "we will send you additional information to complete before your first day." *Id.* at 3. Far from being an integrated contract, the letter clearly indicates that there would be handbooks, policies, rules, regulations, procedures, and additional information not included in the Offer Letter.

The weakness of this argument highlights the desperation of Roig's effort to avoid the clear and explicit terms of the SFR Agreement. He admits that Alder sent it to him, that Alder explained he would get no work unless he signed it, and that he did sign it.

-11-

## IV. CONCLUSION

For the foregoing reasons, Defendant requests that the motion be granted.

DATED: August 9, 2024                SIPOS LAW, PLLC

/s/ Victor Sipos
By Victor Sipos
Attorney for Plaintiff Alder Holdings, LLC

# Exhibit B

Victor A. Sipos, Utah Bar No. 9211
Sipos Law, PLLC
10421 South Jordan Gateway, Suite 600
South Jordan, UT 84095
Tel: 801-860-3444
Fax: 801-665-1266
Email: victor@siposlaw.com

Attorney for Alder Holdings, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JASON ROIG, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALDER HOLDERINGS, LLC, a Utah limited liability company,<br><br>Defendant. | Case No. 2:23-cv-00721-TC-JCB<br>Hon. Tena Campbell<br><br>**SECOND DECLARATION OF KACE SHERWOOD** |

I, **Kace Sherwood,** state:

    1.    At all times after January 1, 2023, I have been the Scheduling Manager for Alder Holdings, LLC ("Alder"), the defendant in this lawsuit.

    2.    Alder hired Jason Roig ("Mr. Roig") to work as a Field Service Technician ("FST")

    3.    As part of the hiring process, Alder informed Roig that he would only get work from Alder if he signed an SFR Agreement. The SFR Agreement is a standard agreement printed on Alder letterhead that Alder requires all Sales Finishing Representatives ("SFR") to sign before they could work.

    4.    Alder sent the SFR Agreement to Roig by DocuSign with the expectation that he would sign it if he wanted to work for Alder.

-1-

5. At all times it was Alder intention to be bound by the SFR Agreement if Roig signed it.

6. Alder received a copy of the SFR Agreement that Roig signed via DocuSign on January 16, 2023. Alder kept a copy of this signed agreement as a business record in its files and at all times acted with the understanding that the SFR Agreement was a binding contract.

7. After Roig signed the SFR Agreement, Alder provided work to Roig and paid him for that work.

8. At Alder, each FST is considered an SFR. Sometimes the terms FST and SFR are used interchangeably, but there is a difference. It can be thought of like the difference between the general term "football player" and a more specific term "running back." Football players can be asked to perform many tasks, including running the ball, going on passing routes, catching passes, throwing passes, blocking, tackling, kicking, etc. The primary focus of a running back is to run the ball or block, but they can be asked to do any of the tasks. Likewise, there are different tasks that SFRs can be assigned to perform. Those with the FST label usually focus on certain tasks, but they could be assigned to perform any task done by an SFR.

Pursuant to Utah Code Ann. § 78B-18a-106, I declare under criminal penalty under the law of Utah that the foregoing is true and correct.

Executed on August 8, 2024  x _____
                                Kace Sherwood